IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | Civil No. ELH-14-2510 |
| v. | * | |
| NEW HAVEN GLASS & MIRROR COMPANY, LLC, | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Entry of Default Judgment ("the Motion") (ECF Nos. 10 & 11) filed by Plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension Fund") and Daniel R. Williams, a fiduciary on behalf of the Pension Fund, Political Action Together Fund, Finish Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund, and the Painters and Allied Trades Labor Management Cooperation Initiative (collectively, the "Plaintiffs" or the "Funds") against Defendant New Haven Glass & Mirror Company, LLC d/b/a New Haven Glass & Mirror d/b/a New Haven Glass and Mirror ("New Haven"). New Haven has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On January 15, 2015, in accordance with 28 U.S.C. § 636 and Local Rule 301, Judge Hollander referred this case to me for a report and recommendation on Plaintiffs' Motion. (ECF No. 12.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that Plaintiffs' Motion be granted.

**I.      FACTUAL AND PROCEDURAL HISTORY**

In this case, the Plaintiffs filed suit against New Haven under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145. (ECF No. 1.) New Haven was personally served with the Complaint and summons but did not file an answer or responsive pleading within the requisite time period. On October 15, 2014, Plaintiffs moved for the Clerk's entry of default (ECF No. 5), and the Clerk entered default against New Haven on the same day (ECF No. 6). On January 12, 2015, Plaintiffs filed the Motion, to which New Haven has not responded. (*See* ECF Nos. 10 & 11.)

**II.     LEGAL ANALYSIS**

    **A.      Standard for Entry of Default Judgment**

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1

(D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B. Liability

Section 301 of the LMRA, 29 U.S.C. § 185, provides that suits alleging violations of a contract between an employer and a labor organization "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Section 515 of ERISA, 29 U.S.C. § 1145, mandates that employers subject to a multi-employer plan or collective bargaining agreement "shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

In this case, New Haven has a number of obligations under its collective bargaining agreements (*see* ECF Nos. 11-4, 11-5, 11-6 & 11-7). New Haven is required to make full and timely payment on a monthly basis of the contributions it owes to the Funds. (*See* ECF Nos. 11-5 at 15 & 11-6 at 7.) New Haven is also required to file monthly remittance reports with the Funds detailing the employees and work for which contributions are required under its collective bargaining agreements. (*See* ECF No. 11-5 at 15-16.) When requested to do so by the Funds, New Haven must furnish all necessary books and records concerning its obligations to the Funds under the collective bargaining agreements so that the Funds may conduct an audit. (*See* ECF No. 11-5 at 16.) New Haven is also required to pay the cost of such an audit if the result of the audit indicates that New Haven is delinquent in its obligations, or otherwise in violation of the International Painters and Allied Trades Industry Pension Fund Trust Agreement. (*Id.*) In addition, New Haven is required to pay liquidated damages, interest, and the Funds' costs of litigation including attorney's fees that occur as a consequence of New Haven's failure to comply with its statutory and contractual obligations. (*See* ECF No. 11-6 at 7-8.) Finally, New Haven resolved a delinquency for the period of February 2013 through September 2013 by signing a Settlement Agreement and Promissory Note ("Settlement Agreement"). (*See* ECF Nos. 1 ¶ 19 & 11-10.) The terms of the Settlement Agreement provide that New Haven owed the Funds $15,622.69 as of October 28, 2013 for the designated period, and that it would pay the Funds a total of $13,048.32 in 18 consecutive monthly installments. (*Id.*)

Accepting as true the well-pleaded factual allegations of the Complaint, New Haven's liability is readily established. New Haven "failed to pay amounts due under the Labor Contracts, Trust Agreements and Plan from January 2011 through March 2014." (ECF No. 1 ¶ 24.) An audit conducted for this period revealed a "substantial delinquency" in New Haven's reporting

and remission of hours worked, which adversely affected the Funds. (*Id.* ¶¶ 25-26.) In addition, New Haven failed to make the all of the payments to the Funds required by the Settlement Agreement. (*Id.* ¶ 28.) Finally, New Haven has failed to pay the Funds the amount owed to them as a result of its violation of its statutory and contractual obligations. (*Id.* ¶ 31.) Accepting these factual allegations as true, I conclude that the Plaintiffs have established that they are entitled to relief on their claims. Because the Plaintiffs have stated legitimate causes of action, I find that they are entitled to a default judgment against New Haven. I recommend that the Court grant the Plaintiffs' Motion for Default Judgment with respect to New Haven's liability.

   C.   **Damages**

Having determined that the Plaintiffs have established New Haven's liability, it is now appropriate to determine the damages to which they are entitled. Generally, an evidentiary hearing is required to determine an award of damages, even in the case of a defendant's default. *See Laborers' Dist. Council Pension v. E.G.S., Inc.,* No. WDQ-09-3174, 2010 WL 1568595 (D. Md. Apr. 16, 2010). However, the Court may award damages "if the record supports the damages requested." *Id*. at *3 (collecting cases). Here, the Plaintiffs have provided sufficient evidence to support its claim for damages in the amount of $57,241.82.

ERISA allows the Plaintiffs to recover liquidated damages and interest, as well as the attorney's fees and costs incurred in this litigation. *See* 29 U.S.C. § 1132(g)(2)(B)-(D). The Funds' trust agreements require employers (such as New Haven) who are delinquent in making contributions to pay liquidated damages and interest in the event that contributions are not timely paid. (*See* ECF Nos. 11-3 ¶¶ 8-10; 11-4 at 15-20; 11-5 at 15-16; and 11-6 at 7-8.) In addition, the use of audits and a provision for a delinquent employer to pay for the costs of an audit are also provided for. (ECF No. 11-5 at 16.)

In support of their claim for damages, the Plaintiffs submit the Affidavit of Vicki McGlone ("Ms. McGlone") (ECF No. 11-3).[1] Ms. McGlone states that she is the "Delinquency Manager of the International Paints and Allied Trades Union and Industry Pension Fund." (*Id.* ¶ 1.) She is familiar with the relevant agreements as well as the regular business records maintained by the Funds related to New Haven. (*Id.* ¶¶ 4-8.) Ms. McGlone is familiar with the audit process employed by the Funds and provides a description of the process in her affidavit. (*Id.* ¶ 9.) Based upon a June 30, 2014 audit of New Haven for the period of January 1, 2011 through March 31, 2014, as well as other information available to her, Ms. McGlone submits that New Haven owes $30,912.29 to the Funds for delinquent contributions, interest, liquidated damages and audit costs. (*Id.* ¶ 10.)

### 1. Delinquent contributions and interest

The audit revealed that New Haven owes $24,160.42 in contributions to the Funds. (*Id.* ¶ 10(a).) Using the fluctuating IRS interest rate, as provided for in the Plan (*see* ECF No. 11-6 at 8), Ms. McGlone determined that New Haven owes interest through December 15, 2014 in the amount of $963.49. Ms. McGlone's interest calculations are set forth in Exhibit 6 of the Motion. (ECF No. 11-8). I have reviewed these calculations (*id.* at 1-4) and they appear to be correct. I find that the Funds are entitled to an award of $24,160.42 for delinquent contributions and $963.49 for interest.

### 2. Liquidated damages

In addition to delinquent contributions and interest, Ms. McGlone also states that New Haven owes liquidated damages in the amount of $4,832.10. (ECF No. 11-3 ¶ 10(c).) This amount was calculated in accordance with the Plan (*see* ECF No. 11-6 at 8), which parallels 29

---

[1] Ms. McGlone submitted a supplemental affidavit on April 30, 2014 (ECF No. 14-2), which I have also considered.

U.S.C. § 1132(g)(2). The Plan requires that the assessment of liquidated damages against New Haven be calculated as the greater of either (1) the amount of interest charged on the unpaid contributions or (2) twenty percent (20%) of the unpaid contributions. (ECF No. 11-6 at 8.) Here, the total interest owed is $963.49, which is an amount lower than twenty percent of New Haven's unpaid contributions ($4,832.10). Accordingly, the Funds are entitled to liquidated damages in the amount of $4,832.10.

### 3. Audit costs

Ms. McGlone states that New Haven owes the Fund the costs of the audit, which amounts to $956.28. (ECF No. 11-3 ¶ 10(d).) The Trust Agreement requires New Haven to comply with audits requested by the Trustees of the Pension Fund and to "pay to the Fund the cost of the audit" where the audit shows New Haven to be "delinquent or in violation of the Rules and Regulations of the Pension Plan and/or the Annuity Plan." (ECF No. 11-5 at 16.) Because the Funds are entitled to seek the costs of the audit that showed New Haven to be delinquent in its contributions, the Funds are entitled to an award of $956.28 as the costs of the audit.

### 4. Settlement Agreement and Promissory Note

Ms. McGlone states that New Haven previously agreed in the Settlement Agreement "that it owed the Funds $15,622.60 in contributions, interest and liquidated damages for the period February 2013 through September 2013." (ECF No. 11-3 at 6.) Under the terms of the Settlement Agreement, New Haven agreed to pay $13,048.32 to the Funds in 18 monthly installments of $795.71. (ECF No. 11-10 at 1-3.) New Haven paid a total of $9,179.28 under the Settlement Agreement, but failed to make the rest of its payments. (ECF No. 11-3 at 6.) As a result of New Haven's default under the Settlement Agreement, New Haven is obligated to repay the outstanding "principal amount . . ., together with accrued interest, liquidated damages

(pursuant to the Funds' Rules, Regulations and Policies) and attorney's fees." (ECF No. 11-10 ¶ 3.)

Here, the liquidated damages owed to the Funds are calculated as the greater of either (1) the amount of interest charged on the unpaid contributions or (2) twenty percent (20%) of the unpaid contributions. (ECF No. 11-6 at 8.) The total interest owed to the Funds at the time of the Settlement Agreement was $176.94. (ECF No. 14-2 at 3.) Twenty percent of the unpaid contributions amounts to $2,574.28. Accordingly, the liquidated damages that New Haven owes to the Funds after its default on the Settlement Agreement is $2,574.28. The total principal amount New Haven owes to the Funds after defaulting on the Settlement Agreement is calculated by adding $2,574.28 in liquidated damages to the settlement sum of $13,048.32, which results in a total principal amount of $15,622.60.  The outstanding principal due to the Funds is $6,443.32, which is calculated by subtracting the amount that New Haven paid in accordance with the Settlement Agreement ($9,179.28) from the total principal amount ($15,622.60). Interest on the outstanding principal balance amounts to $413.28. I have reviewed the Funds' calculations of interest for the amount due after the default under the Settlement Agreement (ECF No. 11-8 at 5) and the calculations appear to be correct. As a result, the total amount that New Haven owes to the Funds for its default under the Settlement Agreement is $6,856.60, which is the sum of the outstanding principal due ($6,443.32) and interest ($413.28). I recommend that the Court award this amount to the Funds as damages for the breach of the Settlement Agreement.

     **5.**    **Attorney's Fees and Costs**

Attorney's fees and costs are available in an ERISA action. 29 U.S.C. § 1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover

unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for nine to fourteen years may reasonably bill $225-350 per hour, and that paralegals and law clerks may reasonably bill $95-150 per hour. These hourly rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, Plaintiffs have been represented by a number of attorneys. (*See* ECF No. 11-9 ¶ 3.) Each of the attorneys have practiced law for between nine and fourteen years. (*Id.* ¶¶ 5-8.) The attorneys all billed at the hourly rate of $340 per hour. This rate is within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate for all of the attorneys. Plaintiffs have submitted detailed time records showing the work performed by the attorneys. In total, Plaintiffs' attorneys spent more than 60 hours working on this case from October 2013 to January 2015. I find that the time Plaintiffs' counsel spent working on this case

is reasonable. I recommend that the Court award to Plaintiffs attorney's fees in the amount of $18,673.50.

Finally, Plaintiffs incurred a total of $799.43 in costs, which includes the $400 fee for filing the complaint, fees for express delivery services, photocopies, computerized legal research, and a service fee. I recommend that the Court award to Plaintiffs' costs in the amount of $799.43.

### D.  Other Relief

Plaintiffs also request that the Court order New Haven to:

> fully and accurately complete and submit to the Funds any and all then outstanding remittance reports with all required information including the name and social security number of each employee, the hours worked, wages paid and contributions owed for that month together with a check for the full amount of the contributions owed.

(ECF No. 10-1 at 3.)

I find that this relief is consistent with New Haven's obligations under its collective bargaining agreements with the Funds. (ECF Nos. 11-5 at 15-16 & 11-6 at 7.)  I recommend that the Court order that New Haven submit the required reports and payment for contributions owed within twenty days of the date of judgment, as requested by Plaintiffs.

### III.  CONCLUSION

In sum, I recommend that the Court:

1. Grant Plaintiffs' Motion for Judgment by Default (ECF No. 10);

2. Enter judgment in favor of Plaintiffs and against Defendant in the total amount of $57,241.82 (the sum of $24,160.42 in delinquent contributions, $963.49 in interest, $4,832.10 in liquidated damages, $956.28 in audit costs, $6,856.60 for the breach of the Settlement

Agreement, $18,673.50 in attorney's fees, and $799.43 in costs), as set forth in Plaintiffs' proposed Judgment (ECF No. 10-1); and

  3. Order Defendant to complete and submit its outstanding remittance reports and payment for contributions owed within twenty days of the date of judgment.

  I also direct the Clerk to mail a copy of this Report and Recommendation to Defendant New Haven Glass & Mirror Company, LLC. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

<u>May 12, 2015</u>                   /s/
Date                        Timothy J. Sullivan
                         United States Magistrate Judge